## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| PLEX CAPITAL, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| HAZEL STREET OPERATIONS, | ) | |
| LLC D/B/A ATLAS | ) | |
| REHABILITATION AND | ) | |
| HEALTHCARE AT DAUGHTERS | ) | |
| OF MIRIAM, AND AVROHOM | ) | |
| AUSPITZ, INDIVIDUALLY, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Plex Capital, LLC ("Factor" or "Plex"), a Kansas limited liability company, by and through its undersigned counsel, hereby sues Defendants Hazel Street Operations, LLC d/b/a Atlas Rehabilitation and Healthcare at Daughters of Miriam ("Account Debtor" or "Atlas"), a New Jersey limited liability company, and Avrohom Auspitz ("Auspitz"), individually, jointly, and severally (collectively, the "Defendants"), and as grounds therefor avers as follows:

## NATURE OF THE CASE

1.      This action arises from Defendants' fraudulent scheme to induce Plex and Plex's factoring client, a healthcare staffing entity named All Hearts Healthcare Staffing Agency LLC ("All Hearts"), to continue providing healthcare staffing services to, and

for the benefit of, Atlas. While Defendants had no present intent to make such payments, they made false representations and express promises to pay for these staffing services and to pay Plex sums due on accounts in full, without deduction. Defendants made these false representations and payment promises to fraudulently induce Plex to continue providing its factoring facility and financing to All Hearts so that All Hearts would continue providing staffing services to Atlas. Relying on Defendants' false representations and payment promises, Plex continued providing its factoring facility and financing to All Hearts and All Hearts continued providing staffing services to Atlas. Thus, Plex and All Hearts were fraudulently induced under false pretenses and have sustained damages as a result.

## **THE PARTIES**

2.     Plex is a Kansas limited liability company with its principal place of business in Johnson County, Kansas.

3.     Defendant Atlas is a New Jersey limited liability company that operates an assisted living, long-term care, and rehabilitation facility named Atlas Rehabilitation and Healthcare at Daughters of Miriam located at 155 Hazel St., Clifton, New Jersey 07011 (the "Facility"), and Atlas's principal place of business is in Clifton, New Jersey.

4.     Defendant Auspitz is an individual who is over the age of 18.

## **JURISDICTION AND VENUE**

5.     This Court, as detailed below, has original, subject matter jurisdiction over

the claims in this matter pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the amount in controversy, without interest and costs, exceeds the sum or value of $75,000.00.

6.      Plaintiff Plex is a citizen of the State of Kansas because it was formed as a Kansas limited liability company, has its principal place of business in Kansas, and each of its members is an individual who is a citizen of Kansas.

7.      Atlas is a citizen of the State of New Jersey because it was formed as a New Jersey limited liability company, has its principal place of business in New Jersey, and upon information and belief, none of Atlas's members is a citizen of Kansas.  Atlas may be served by serving its registered agent, VCorp Services, LLC, at 820 Bear Tavern Road, West Trenton, New Jersey 08628.

8.      Auspitz is an individual, who upon information and belief, is a citizen of the State of New York who resides at and may be served at 50 Wilshire Drive, Spring Valley, New York 10977.

9.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all claims that are so related to the claims in the action within its original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that this action is filed in a judicial district in which a substantial part of the events or

omissions giving rise to the claims occurred.   More specifically, the above-stated requirements are satisfied due to Atlas having entered into a contract with Plex's factoring client, All Hearts, a Georgia based staffing company having its principal office located in Douglasville, Georgia, thereby having contracted with All Hearts in this district in order for All Hearts to provide the staffing services to Atlas. Moreover, Atlas, and its authorized agent, Auspitz, sent communications to All Hearts in this district to fraudulently induce Plex to continue providing factoring facilities and funding to All Hearts so that All Hearts could and would continue providing staffing services to Atlas.

## CONDITIONS PRECEDENT

11.    All conditions precedent to the bringing of this action have been performed, excused, and/or waived.

## BACKGROUND FACTS

### A. The Factoring Relationship Between Plex Capital and All Hearts

12.    Plex is in the factoring business, which business involves, *inter alia*, the purchasing of accounts ("Accounts")[1] from businesses ("Factoring Clients") with

---

[1] For the purpose of this pleading, the term "Accounts" is intended to have the meaning given to this term by the Uniform Commercial Code ("UCC"), as adopted throughout the United States.  A typical uniform definition may be found in Georgia's version of the UCC, and the term means "a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold…, (ii) for services rendered."  O.C.G.A. § 11-9-102(a)(2).

4

whom it has formed a contractual relationship, the terms of which are generally contained in invoices.

13.     Within the factoring industry, the entity that purchases[2] Accounts is commonly referred to as the "Factor" or "Purchaser" of Accounts, in this case Plex. The entity from whom the Accounts are purchased is commonly referred to as the Factoring Client or "Seller."  The Factoring Client's customer for whom the Seller has performed service(s) or sold good(s) and to whom an invoice is ordinarily issued to evidence the terms of sale and request payment is commonly referred to as the "Customer" or "Account Debtor."[3]

14.     On or about October 17, 2022, non-party All Hearts ("Factoring Client") entered into an agreement with Plex titled "Accounts Purchase and Security Agreement" (as amended by that Personnel Staffing Rider to Accounts Purchase and Security Agreement, hereinafter the "Factoring Agreement").  A true and correct copy

---

[2] For the purpose of this pleading, the term "purchase" is intended to have the meaning given to this term by the UCC, as adopted throughout the United States.  A typical uniform definition may be found in Georgia's version of the UCC, and the term means "taking by sale, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction creating an interest in property." O.C.G.A. § 11-1-201(b)(29).

[3] For the purpose of this pleading, the term "Account Debtor" is intended to have the meaning given to this term by the UCC, as adopted throughout the United States.  A typical uniform definition may be found in Georgia's version of the UCC, and the term means "a person obligated on an account."  O.C.G.A. § 11-9-102(a)(3).

#3590250v1

of the Factoring Agreement is attached hereto as **<u>Exhibit A</u>**, but for any terms or provisions deemed confidential, which have been removed or redacted.

15.     Toya Wallace, as CEO, and an authorized agent of All Hearts, executed the Factoring Agreement on behalf of All Hearts in favor of Plex.

16.     Pursuant to the Factoring Agreement, Plex contractually purchased Accounts from All Hearts ("Purchased Accounts") arising from All Hearts' provision of nurse staffing services (*i.e.*, the "Staffing Services," as more specifically identified below) under certain staffing agreements between All Hearts and its customers, including Defendant Atlas.  *See* Exhibit A § 2.

17.     In addition, All Hearts granted Plex a first priority security interest[4] in all, or substantially all, of All Hearts' property (*i.e.*, the "Collateral"), including, but not limited to, all Accounts and all proceeds to secure all monetary and non-monetary obligations under the Factoring Agreement ("Collateral").

18.     Until all of the Obligations under the Factoring Agreement have been paid in full, **whether or not All Hearts is in default under the Factoring Agreement**, All Hearts expressly and irrevocably granted a power of attorney to Plex to exercise the authority to do each of the following:

---

[4] Pursuant to Georgia's version of the UCC, the term "security interest" means "an interest in personal property or fixtures which secures payment or performance of an obligation," and the term "includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9 of this title."  O.C.G.A. § 11-1-201(b)(35).

#3590250v1

10.1.1 Receive, take, endorse, assign, deliver, accept and deposit, in the name of Purchaser [Plex] or Seller [All Hearts], any and all Proceeds of any Collateral securing the Obligations or the Proceeds thereof;

10.1.2 Take or bring, in the name of Purchaser or Seller, all steps, actions, suits or proceedings deemed by Purchaser necessary or desirable to effect collection of or other realization upon any unpaid, or wrongfully paid over the notice requirement of Section 12.3, Accounts and Purchased Accounts;

10.1.3 Pay any sums necessary to discharge any lien or encumbrance which is or may become senior to Purchaser's ownership rights in the Purchased Accounts or Security Interest in the Collateral, which sums shall be included as Obligations hereunder, and in connection with which sums the Late Charge shall accrue and shall be due and payable;

10.1.4 Notify any Payor [i.e., Account Debtor] obligated with respect to any Account, that all rights to receive payment of Accounts (Purchased and non-Purchased Accounts) have been unconditionally assigned by Seller to Purchaser and that all payments must be made solely and exclusively to the order of and directly delivered to Purchaser; that Purchaser has also been assigned all rights to enforce any action or claim in connection with the above-stated assignments, including, but not limited to, all rights in connection with the underlying contracts and agreements giving rise or related to the Accounts. All enforcement rights provided herein may be undertaken at any time and in any manner that Purchaser may determine in its Business Judgment, either in the name of Purchaser or Seller. Nothing contained in this Agreement shall alter or adversely affect Purchaser's sole and exclusive right to enforce the right to receive payment of all Purchased or non-Purchased Accounts, regardless of any Business Judgment made as to enforcement of any breach of an underlying contract or any other agreement between Seller and a Purchaser;

10.1.5 Communicate directly with Seller's Payors to, among other things, verify the amount and validity of any Account created by Seller.

*See* Exhibit A (brackets added to include party reference).

19.     In addition to the rights and powers granted to Plex in Sections 10.1.1 through 10.1.5 of the Factoring Agreement, after an Event of Default, pursuant to Section 10.1.6.2, Plex is also authorized to, among other things:

> Extend the time of payment of, compromise or settle for cash, credit, return of merchandise, and upon any terms or conditions, any and all Accounts and discharge or release any Payor without affecting any of the Obligations.

*Id.*

20.     In addition, Section 10.2 of the Factoring Agreement states that:

> Seller [All Hearts] authorizes Purchaser [Plex] to accept, endorse and deposit on behalf of Seller any checks tendered by a Payor "in full payment" of its obligation to Seller. Seller shall not assert against Purchaser any claim arising therefrom, irrespective of whether such action by Purchaser effects an accord and satisfaction of Seller's claims, under § 3-311 of the Uniform Commercial Code, or otherwise.

*Id.*

21.     Pursuant to the Factoring Agreement, "[b]efore sending any Invoice to an Account Debtor, Seller [here, All Hearts] shall cause same to be conspicuously marked with a notice of assignment and a duty to pay Purchaser ("Notification of Assignment") in the form and manner as may be required by Purchaser."  *Id.* § 12.3.

22.     Section 12.7 in the Factoring Agreement establishes Plex's right to dominion and control over all account debtor payments and/or proceeds of any Accounts, and reads, in relevant part, as follows:

> …Seller shall remit to Purchaser, in kind, any Negotiable Instrument Seller receives from a Payor on an Account that is paid in violation of the Notification of Assignment as provided in Section 12.3. Moreover, in the

8

event Seller deposits any Negotiable Instrument or receives payment electronically from a Payor after having received a Notification of Assignment as provided in Section 12.3, such payment and Proceeds ***shall be held, in trust, by Seller for the exclusive benefit of Purchaser and Seller shall remit and pay such trust funds to Purchaser by no later than the second (2nd) Business Day following the date of receipt by Seller***.

*Id.* § 12.7 (emphasis added).

23.     In order to implement Plex's sole and exclusive rights, as the assignee, to receive payment from Atlas on its account debts to All Hearts, on December 9, 2022, Plex issued a letter to Atlas (the "Letter Notice of Assignment"), which reads as follows:

**NOTICE OF ASSIGNMENT AND PAYMENT REDIRECTION LETTER**

Dear Customer:

In order to accommodate the growth of our business, we have retained the services of PLEX Capital, LLC ("PLEX") to fund and manage our accounts, which arrangement includes our irrevocable sale and assignment to PLEX of all of our rights to receive payment on our currently outstanding and all future accounts and payment intangibles under all applicable laws including 9-406 of the Uniform Commercial Code. This change in procedure should allow us to serve you more efficiently.

ACCORDINGLY, IMMEDIATELY AFTER YOUR RECEIPT OF THIS NOTICE, PAYMENTS ON ALL INVOICES SHALL BE MADE SOLELY AND EXCLUSIVELY TO PLEX, AS FOLLOWS:

**By Mail:**
**PLEX Capital, LLC c/o**
**All Hearts Healthcare**
**Staffing Agency LLC**
[REDACTED][REDACTED]

**By ACH:**
**PLEX Capital, LLC**
**Account No.:**
[REDACTED]
**Routing No.:**
[REDACTED]
**Remittance:**
[REDACTED]

9

THIS NOTICE OF ASSIGNMENT AND PAYMENT REDIRECTION LETTER, WHICH CHANGES THE PAYEE ON OUR ACCOUNTS, IS EFFECTIVE IMMEDIATELY AND DUE TO POTENTIAL CYBER-SCAMMING, MAY NOT IN ANY WAY BE CHANGED, MODIFIED, ALTERED, REVOKED (COLLECTIVELY, "CHANGED") BY ANY FORM OF ELECTRONIC COMMUNICATION. THIS NOTICE OF PAYMENT REDIRECTION LETTER MAY ONLY BE CHANGED BY PLEX'S WRITTEN INSTRUCTIONS ISSUED BY AN AUTHORIZED REPRESENTATIVE OF PLEX AND DELIVERED TO YOU BY CERTIFIED OR REGISTERED MAIL. PAYMENT TO ANYONE OTHER THAN PLEX WILL NOT DISCHARGE YOUR OBLIGATION TO PAY ANY SUCH ACCOUNT OR PAYMENT INTANGIBLE.

If you have any questions concerning this notification of assignment, please contact:

**PLEX Capital, LLC**
**Attention: Josh Goode**
**(913) 229-4224**

| | |
|---|---|
| Sincerely, | Confirmed, |
| All Hearts Healthcare Staffing Agency LLC | Plex Capital, LLC |
| By: _____ | By: Josh Goode |
| Title: CEO | Title: Chief Operating Officer[5] |

A copy of Plex's Letter Notice of Assignment is attached hereto as **Exhibit B.**

24.    Plex's Letter Notice of Assignment was delivered to Atlas, the Account Debtor.

---

[5] In compliance with the policy of the Judicial Conference of the United States, the E-Government Act of 2002, Pub. L. No. 107-347, and Section I of Standing Order No. 19-01, certain personal and financial identifiers have been redacted from the quoted text of the Letter Notice of Assignment.

25.     On December 9, 2022, Atlas received Plex's Letter Notice of Assignment.

26.     Article 9 of the Uniform Commercial Code, § 9-406(a), as adopted in Georgia as O.C.G.A. § 11-9-406(a), states as follows:

> [A]n account debtor [here, Atlas] on an account . . . may discharge its obligation by paying the assignor [here, All Hearts] until, but not after, the account debtor [here, Atlas] receives a notification, authenticated by the assignor [here, All Hearts] or the assignee [here, Plex Capital], that the amount due or to become due has been assigned and that payment is to be made to the assignee [here, Plex Capital]. ***After receipt of the notification, the account debtor*** [here, Atlas] ***may discharge its obligation by paying the assignee*** [here, Plex Capital] ***and may not discharge the obligation by paying the assignor*** [here, All Hearts].

(emphasis added and brackets included for reference purposes only).

27.     Due to the content and fact of delivery of Plex's Letter Notice of Assignment to Atlas (the Account Debtor) in accordance with UCC § 9-406, O.C.G.A. § 11-9-406(a), and applicable common law, Atlas could only lawfully discharge its obligation on the invoices issued to it by All Hearts' by remitting payment directly to Plex.

### B. <u>The Staffing Agreement Between All Hearts, on the One Hand, and Atlas, on the Other Hand</u>

28.     All Hearts is a healthcare staffing agency.

29.     All Hearts contracted with Atlas to provide healthcare associate staffing services for Atlas's Facility.

11

#3590250v1

30.    On or about September 14, 2022, All Hearts entered into an agreement entitled "Client Staffing Agreement" with Atlas (the "First Staffing Agreement").

31.    Pursuant to the First Staffing Agreement between All Hearts and Atlas, All Hearts offered to provide healthcare staffing services to, or for the benefit of, Atlas. The First Staffing Agreement provided that All Hearts agrees to provide Registered Nurses and Licensed Practical Nurses requested by Atlas to perform nurse staffing services at the location of Atlas's Facility.

32.    On or about October 2022, Atlas's authorized agent, Michelle Reich, notified All Hearts that Atlas desired to supplement the scope of the staffing services to be performed by All Hearts under the First Staffing Agreement by requesting, in addition to providing the Registered Nurses and Licensed Practical Nurses, that All Hearts also provide Certified Nursing Assistants at the location of Atlas's Facility.

33.    At the request of Atlas, in order to supplement the staffing services that All Hearts offered to provide under the First Staffing Agreement, All Hearts and Atlas negotiated a new staffing agreement pursuant to which All Hearts agreed to provide Registered Nurses, Licensed Practical Nurses, *and* Certified Nursing Assistants at Atlas's Facility (the "Staffing Services").

34.    After Atlas and All Hearts negotiated their agreement, including the terms of payment for the Certified Nursing Assistants' services All Hearts would provide to Atlas, All Hearts sent Atlas a new agreement entitled "Client Staffing Agreement" (the

"October 2022 Agreement"). A true and correct copy of the October 2022 Agreement is attached hereto as **Exhibit C**.

35.     The October 2022 Agreement between All Hearts and Atlas states that "This Agreement entered into on 10/7/2022 is by and between All Hearts Healthcare Staffing Agency**,** LLC, a Georgia company with its main office located in Douglasville, GA and Atlas Rehabilitation and Healthcare at Daughters of Miriam located at 155 Hazel St, Clifton, NJ 07011 (hereinafter referred to as 'CLIENT')." *Id.* at 1.

36.     The October 2022 Agreement reads as follows:

### PAYMENT FOR SERVICES

All Hearts Healthcare Staffing Agency will submit invoices to CLIENT on Mondays, no later than 5pm at the rates established every week for personnel provided to CLIENT during the preceding week.

- Invoices for payment to All Hearts Healthcare Staffing Agency are generated and sent out weekly. All invoices dated from the 1st to the 15th of the month are due by the 30th of the same month. All invoices dated from the 16th to the 31st of the month are due by the 15th of the following month. CLIENT shall make all payments by ACH to the account listed on file. In the event CLIENT is unable to make payments electronically, CLIENT shall remit payment by check to the address set forth on the invoice by the due date noted above.

### PERSONNEL LOCAL HOURLY RATES

| | |
|---|---|
| **Registered Nurse** | **$75.00/hour** |
| **Licensed Practical Nurse** | **$60.00/hour** |
| **Certified Nursing Assistant** | **$45.00/hour** |

*Id.* at 3-4.

#3590250v1

37.    Atlas received and accepted the October 2022 Agreement and beginning on or about October 8, 2022, Atlas issued communications to All Hearts requesting that All Hearts provide Certified Nursing Assistants to perform Staffing Services at Atlas's Facility in accordance with the October 2022 Agreement.

38.    All Hearts performed under the October 2022 Agreement by providing the Staffing Services requested by Atlas.  *See e.g.*, attached email chain between Atlas's employee Maileen Baluyot and All Hearts' manager Toya Wallace, dated Oct. 7, 2022, at 4:27 PM attached hereto as **Exhibit D at 4**.

39.    Pursuant to the October 2022 Agreement, after All Hearts performed the Staffing Services it submitted weekly invoices to Atlas reflecting the Staffing Services, including, the name of the employees, the dates and hours each employee performed Staffing Services, and the amounts due for the Staffing Services in accordance with the October 2022 Agreement.

C.  **Atlas's Failure to Pay Plex the Sums Due on the Accounts Arising from the Staffing Services Performed by All Hearts Under the October 2022 Staffing Agreement**

40.    From October 2022 until around April 2023, when Atlas received invoices issued by All Hearts, Atlas routinely approved the invoices and processed payment by remitting payment to Plex, as assignee of All Hearts' rights to receive payment of the invoices issued to Atlas by All Hearts.

41.     Then, on or about April 2023, Plex failed to receive payment of amounts due in respect to certain invoices issued to Atlas for payment of the Staffing Services provided by All Hearts, including each of the following invoices issued by All Hearts to Atlas:

| Invoice Number | Invoice Date | Due Date | Original Face Invoice Amount | Revised Approved Invoice Amount |
|---|---|---|---|---|
| 920 | 02/27/2023 | 03/15/2023 | $59,184.38 | $ 54,654.38[6] |
| 921 | 03/06/2023 | 03/21/2023 | $51,948.75 | $ 45,615.00 |
| 923 | 03/20/2023 | 04/04/2023 | $55,284.38 | $ 53,285.63 |
| 924 | 03/27/2023 | 04/11/2023 | $57,025.01 | $ 55,335.63 |
| Total Amount Owed: | | | $223,442.52 | $208,890.64 |

(invoice numbers 920, 921, 923, and 924 are hereinafter referenced as the "Approved Accounts").  Copies of the Approved Accounts are including within Composite **Exhibit E** attached hereto.

42.     As a result of Atlas having failed to timely pay Plex the sums due for the Approved Accounts, Plex and All Hearts notified Atlas that Plex intended to cease providing advances to All Hearts until the parties could reach a satisfactory resolution of Atlas's debts related to the Approved Accounts.

43.     Thereafter, All Hearts' manager, Toya Wallace, communicated with Atlas's authorized agents, including Atlas's administrator, Auspitz, to address Atlas's

---

[6] The original amount of the invoice as reflected in Exhibit E was reduced to the $54k amount per the agreement between Atlas and All Hearts.

#3590250v1

payment for the Staffing Services reflected in the Approved Accounts.

44.    At the request of Atlas, All Hearts and Plex agreed to make certain adjustments to the amount of the hours worked by one or more of All Hearts' employees as referenced in the Approved Accounts, and after making such adjustments the parties struck a balance that All Hearts agreed to accept from Atlas in payment of the Approved Accounts totaling the aggregate face amount of $208,890.64.

45.    As agreed by the parties, All Hearts issued revised versions of invoice numbers 920, 921, 923 and 924 to Atlas reflecting the reduced invoice balances in accordance with Atlas's agreement to timely pay those reduced balances as an accord and satisfaction in order to satisfy the Staffing Services provided by All Hearts.

46.    On or about April 14, 2023, at the request of All Hearts' manager, Toya Wallace, and Plex's Chief Operating Officer, Josh Goode, Atlas's administrator, Auspitz, agreed to participate in a telephone call with Wallace and Goode for purposes of, among other things, clarifying the process that future Staffing Services would be invoiced by All Hearts and how such invoices would be paid by Atlas.

47.    During the parties' April 14, 2023 telephone call, Auspitz, serving as Atlas's authorized agent, reaffirmed that Atlas had unconditionally agreed to pay Plex all sums due under the revised Approved Accounts, in full.

48.    During the parties' April 14, 2023 telephone call, Auspitz explained to Goode and Wallace that Atlas had experienced turnover in Atlas's administration,

which was the reason that Atlas had failed to pay to Plex the sums due on the Approved Accounts.

49.    Plex notified Atlas that due to Atlas's failure to timely pay the amounts due under the Approved Accounts, before Plex would be willing to continue making additional advances to All Hearts arising from future Staffing Services performed by All Hearts under the October 2022 Agreement, Plex requested that Atlas (a) provide it with adequate assurances concerning the process and manner in which Atlas would review and approve for payment any future invoices issued by All Hearts' to Atlas, and (b) confirm that Atlas would promptly process the payments due to Plex for all outstanding balances on the Approved Accounts, without recoupment, setoff, or any deduction to the agreed amounts owed as reflected in the invoices.

50.    In response to Plex's inquiries, Auspitz notified Plex that Atlas would pay the Approved Accounts, in full, without setoff or deduction, and that, in respect to any future invoices issued by All Hearts to Atlas for payment of future Staffing Services performed for the Facility, Atlas agreed to notify All Hearts within 24 to 48 hours of Atlas's receipt of an invoice of a dispute or discrepancies in respect to the amount due as identified in the invoices submitted by All Hearts.

51.    In reliance upon the Auspitz's express statements and assurances made on Atlas's behalf to Plex during the April 14, 2023 telephone call, Plex reactivated the factoring facilities, agreed to renew its purchase of All Hearts' accounts with Atlas, and

17

agreed to make additional advances available to All Hearts so as to enable All Hearts to continue providing the Staffing Services requested by Atlas.

52.     Accordingly, pursuant to the October 2022 Agreement, after Plex agreed to continue providing factoring facilities by purchasing additional Accounts from All Hearts for Staffing Services performed for Atlas, All Hearts performed additional Staffing Services for Atlas and, in connection therewith, issued invoices to Atlas for payment of those services.

53.     In addition to the above-referenced four (4) invoices corresponding to the Approved Accounts (which total $208,890.64) that Atlas unconditionally agreed to pay in full to Plex, All Hearts issued seven (7) further invoices (which total $294,272.03) to Atlas reflecting additional Staffing Services All Hearts provided to Atlas.   The following chart includes the numbers, dates, and amounts for these additional seven (7) unpaid invoices:

| Invoice Number | Invoice Date | Due Date | Invoice Amount |
|---|---|---|---|
| 925 | 04/03/2023 | 04/18/2023 | $46,111.88 |
| 926 | 04/10/2023 | 04/25/2023 | $47,319.38 |
| 927 | 04/17/2023 | 05/02/2023 | $40,207.50 |
| 928 | 04/21/2023 | 05/06/2023 | $6,037.50 |
| 929 | 04/24/2023 | 05/09/2023 | $47,596.88 |
| 930 | 05/03/2023 | 05/03/2023 | $64,293.89 |
| 931 | 05/03/2023 | 05/18/2023 | $42,705.00 |
| **Total Amount Owed:** | | | **$294,272.03** |

Copies of these seven (7) invoices are included in Composite **Exhibit F** attached hereto, and all eleven (11) unpaid invoices (including invoices corresponding to the Approved

Accounts) are collectively referenced as the "Matured and Unpaid Invoices."

54.     The Matured and Unpaid Invoices have matured, and payment is due and owing in accordance with the payment terms reflected in the invoices.  The aggregate face amount of the eleven (11) Matured and Unpaid Invoices is $503,162.67.

55.     Plex has not received any payments from the Account Debtor, Atlas, of any of the sums due on the Matured and Unpaid Invoices.

56.     Plex has retained the law firms of Ullman & Ullman, P.A. and Bondurant, Mixson & Elmore, LLP to represent it in this matter and has agreed to compensate counsel for their professional legal services provided to Plex in this matter.

## COUNT I
## BREACH OF CONTRACT FOR COLLECTION OF THE ACCOUNTS
### (Against Atlas)

Plex hereby sues Defendant Atlas for collection of Matured and Unpaid Accounts and states as follows:

57.     Plex realleges and incorporates by reference Paragraphs 1 through 56 above as if fully set forth herein.  Plex hereby sues defendant Atlas for breach of contract for failure to pay accounts and states as follows.

58.     Pursuant to 9-607 of the UCC, adopted in Georgia as O.C.G.A. § 11-9-607, and applicable common law, Plex, as assignee of the right to receive payment, is entitled to collect from Atlas, the Account Debtor, all of the amounts due and owing on the Matured and Unpaid Invoices.

19

59.     O.C.G.A. § 11-9-607, states, in relevant part:

(a) ***Collection and enforcement generally.*** If so agreed, and in any event after default, a secured party [here, Plex]:

(1) May notify an account debtor [here, Atlas] or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party [here, Plex];

(2) May take any proceeds to which the secured party [here, Plex] is entitled under Code Section 11-9-315;

(3) ***May enforce the obligations of an account debtor*** [here, Atlas] ***or other person obligated on collateral and exercise the rights of the debtor*** [here, All Hearts] ***with respect to the obligation of the account debtor*** [here, Atlas] ***or other person obligated on collateral to make payment or otherwise render performance to the debtor*** [here, All Hearts], and with respect to any property that secures the obligations of the account debtor [here, Atlas] or other person obligated on the collateral…

Emphasis added.

60.     In accordance with the October 2022 Agreement between Atlas and All Hearts, All Hearts materially and substantially performed the Staffing Services to and for the benefit of Atlas and in connection therewith, Atlas became obligated on all invoices arising under the agreement between Atlas and All Hearts including the Matured and Unpaid Invoices, which were issued to Atlas by All Hearts for payment for the Staffing Services.

61.     Atlas received the Matured and Unpaid Invoices.

#3590250v1

62.     Pursuant to Georgia's[7] version of UCC § 9-406(a) and § 9-607, and applicable common law, the Account Debtor, Atlas, could only discharge its obligation on the Matured and Unpaid Invoices by paying Plex after receipt of Plex's Letter Notice of Assignment, and payment to All Hearts (or any other person) is ineffective to discharge the obligation, so Plex is entitled to enforce payment in connection therewith.

63.     Atlas is and remains liable to Plex for all sums due on the Matured and Unpaid Invoices, and any other unpaid, open, and matured Accounts in respect to which payment is or becomes due in connection with Staffing Services provided by All Hearts.[8]

64.     Plex has suffered damages as a result of the Account Debtor, Atlas's failure

---

[7] The staffing agreement entered into between All Hearts and Atlas under which agreement All Hearts performed the Staffing Services giving rise to the accounts that Plex is seeking to collect payment from Atlas contains a contractual choice-of-law provision that reads as follows:

> ***This Agreement, and all matters relating to it shall be governed by the laws, rules, and regulations of the State of Georgia***, as are now in effect or as may be later amended or modified, without reference to the choice of law rules on any state.  In the event that any provision of this agreement conflicts with or is inconsistent with provisions of those laws, rules or regulations, the provisions of the laws, rules, and regulations shall govern and supersede.

*See* **Exhibit C at 6** (emphasis added).

[8] Plex's claim includes any additional invoices that, during the discovery period, Plex may learn the Account Debtor misdirected payment by paying All Hearts, instead of paying Plex, after the Account Debtor's receipt of Plex's Letter Notice of Assignment.

21

to timely pay Plex including (without limitation) all sums due on the Matured and Unpaid Invoices.

65.    Atlas owes Plex the sum of not less than $503,162.67 on the Matured and Unpaid Invoices together with all amounts due and owing in respect to any other invoices, for which payment was not made to Plex, on or after the date of delivery of the initial Plex Letter Notice of Assignment, plus costs and expenses, and prejudgment interest at the rate prescribed by law.

**WHEREFORE**, Plex Capital, LLC respectfully requests that the Court enter a judgment awarding all damages, legal and equitable, including (without limitation) compensatory damages against Defendant Atlas in the amount of $503,162.67, and any other amounts owing to Plex— including, without limitation, any amounts owed by Atlas to Plex and to which Atlas misdirected payments after receipt of Plex's Letter Notice of Assignment—together with costs, expenses, prejudgment interest, and such other relief as the Court deems necessary and proper.

### COUNT II
### ACCOUNT STATED
### (Against Atlas)

Plex hereby sues Defendant Atlas for Account Stated and states as follows:

66.    Plex realleges and incorporates by reference Paragraphs 1 through 65 above as if fully set forth herein.

#3590250v1

67.    All Hearts and Atlas are parties to an October 2022 Agreement, pursuant to which All Hearts agreed to perform the Staffing Services giving rise to indebtedness owing to All Hearts by Atlas.

68.    The Approved Accounts reflect the previous transactions between the parties establishing a debtor-creditor relationship.

69.    The Approved Accounts reflect the terms of payment of an express agreement between the parties on the amount due from Atlas to All Hearts for the Staffing Services performed by All Hearts.

70.    The Approved Accounts were the subject of an account stated that was rendered to Atlas, the party sought to be charged reciting the amount of the existing debt owing to All Hearts for the Staffing Services.

71.    Atlas promised to pay All Hearts the face amount due for the Staffing Services performed by All Hearts as reflected in the Approved Accounts.

72.    Atlas received the Approved Accounts.

73.    Atlas did not object to the Approved Accounts within a reasonable time after its receipt of the invoices issued by All Hearts.

74.    Atlas expressly agreed to the correctness of balances of the invoices owing for the Staffing Services performed by All Hearts.

75.    Pursuant to the October 2022 Agreement, Atlas agreed to make payment for all invoices issued by All Hearts "from the 1st to the 15th of the month . . . by the 30th

23

of the same month" and make payment for all invoices issued by All Hearts "from the 16th to the 31st of the month . . . by the 15th of the following month." *See* **Exhibit C at 3.**

76.   Atlas failed to object to the correctness of the stated amounts in the Matured and Unpaid Invoices and continued to accept the Staffing Services, which constitutes an agreement to pay the face amounts stated in the invoices.

77.   Pursuant the terms of the October 2022 Agreement and the usual course dealings between the parties, Atlas assented to the account stated, therefore striking a balance owing on the invoices by All Hearts.

78.   Pursuant to this claim for relief for account stated, Atlas is and remains liable to Plex, as assignee of the right to receive payment for all sums due on the Matured and Unpaid Invoices in the total amount of $503,162.67, plus costs, expenses, and prejudgment interest at the rate prescribed by law.

**WHEREFORE**, Plex respectfully requests that the Court award damages to Plex against Defendant Atlas in the amount of $503,162.67, together with costs, expenses, prejudgment interest, and such other relief as the Court deems necessary and proper.

## COUNT III
## PROMISSORY ESTOPPEL
### (Against Atlas)

(This claim may be a statement of a claim alternative or inconsistent to Counts I and II as authorized by Fed. R. Civ. Pro. 8(d)(2) and (3)).

Plex hereby sues Defendant Atlas for Promissory Estoppel and states as follows:

24

79.     Plex realleges and incorporates by reference Paragraphs 1 through 56 above as if fully set forth herein.

80.     Through its authorized agent, Auspitz, Atlas promised All Hearts and Plex that (a) Atlas would pay Plex all sums due on the Approved Accounts without setoff or deduction, and (b) with respect to any future invoices issued by All Hearts to Atlas for payment of future Staffing Services performed for Atlas's Facility, Atlas would notify All Hearts, within 24 to 48 hours of Atlas's receipt of an invoice, of any disputes or discrepancies regarding the amount due as identified in the invoice(s) ("Atlas's Promises").

81.     Atlas should have reasonably expected Plex and All Hearts to rely on Atlas's Promises as a result of Plex having notified Atlas that as a result of Atlas having failed to timely pay Plex the sums due for the Approved Accounts, Plex intended to cease providing purchase price advances and payments to All Hearts under the Factoring Agreement, and as a result, Plex ceased purchasing the invoices issued by All Hearts until all these parties could reach a satisfactory resolution of any billing issues regarding the Approved Accounts.

82.     Plex relied on Atlas's Promises, and in doing so, Plex changed its position to Plex's detriment due to Plex having elected to reactivate the factoring facilities by permitting All Hearts to continue to sell accounts to Plex, and Plex commenced

providing additional advances to All Hearts so as to enable All Hearts to continue to provide the Staffing Services requested by Atlas.

83.     An injustice can only be avoided by the enforcement of Atlas's Promises because, as a result of Plex's reliance, Plex changed its position to its detriment by surrendering, forgoing, or rendering Plex's valuable rights to cease making purchase price payments to All Hearts under the Factoring Agreement.

**WHEREFORE**, Plex Capital, LLC respectfully requests that the Court enter a judgment awarding all damages, legal and equitable, including (without limitation) damages against Defendant Atlas in the amount of $503,162.67, together with costs, expenses, prejudgment interest, and such other relief as the Court deems necessary and proper.

<u>**COUNT IV**</u>
<u>**UNJUST ENRICHMENT**</u>
<u>**(Against Atlas)**</u>
(This claim may be a statement of a claim alternative or inconsistent
to Counts I and II as authorized by Fed. R. Civ. Pro. 8(d)(2) and (3)).

Plex hereby sues Defendant Atlas for Unjust Enrichment and states as follows:

84.     Plex realleges and incorporates by reference Paragraphs 1 through 27 above as if fully set forth herein.

85.     All Hearts conferred a benefit upon Atlas by performing the staffing services.

#3590250v1

86.    Atlas appreciated or had knowledge of the staffing services performed by All Hearts, and Atlas accepted or retained the staffing services under circumstances as to make it inequitable for Atlas to accept the staffing services without payment of its value.

**WHEREFORE**, Plex respectfully requests that the Court enter a judgment in its favor on Count IV and against Atlas for the value of the staffing services provided by All Hearts, together with costs, expenses, prejudgment interest, and such other relief as the Court deems necessary and proper.

## COUNT V
## FRAUDULENT INDUCEMENT
### (Against Both Defendants)

Plex hereby sues Defendants Atlas and Auspitz for Fraudulent Inducement and states as follows:

87.    Plex realleges and incorporates by reference Paragraphs 1 through 56 and 86 above as if fully set forth herein.

88.    Defendants intentionally, knowingly, and maliciously made the Material Misrepresentations to Plex.

89.    Defendants knew that the Material Misrepresentations were not true and that they were material to Plex's decision to advance funds to All Hearts.

90.    Defendants made the Material Misrepresentations with the intent to deceive Plex and to induce Plex to: (i) decide to permit All Hearts to continue to sell

27

Accounts to Plex after Plex notified the Defendants of Plex's decision to cease purchasing Accounts due to Atlas's failure to timely pay for Staffing Services in accordance with the October 2022 Agreement, (ii) continue to purchase the Accounts in order to provide additional advances to All Hearts in order to enable All Hearts to continue performing the Staffing Services requested by Atlas after April 2023, and (iii) make hundreds of thousands of additional advances to All Hearts so that All Hearts would continue to perform the Staffing Services for Atlas after April 2023.

91.    Plex believed and reasonably and justifiably relied on the Material Misrepresentations in (i) electing to permit All Hearts to continue to sell Accounts and Plex's decision to continue to purchase Accounts from All Hearts in order to receive Plex's advances so that All Hearts could continue performing the Staffing Services requested by Atlas after April 2023, and (ii) providing hundreds of thousands of additional purchase price payments and advances to All Hearts for Accounts owing by Atlas.

92.    As a direct and proximate result of the Defendants' fraudulent conduct, Plex has suffered damages in excess of five hundred thousand dollars.

93.    Defendants knew that their fraudulent conduct was wrongful and that it would likely cause injury and damage to Plex.  Despite that knowledge, Defendants intentionally pursued their fraudulent and wrongful course of conduct, which in fact caused injury and damages to Plex.

#3590250v1

94.     Defendants Atlas's and Auspitz's actions evince willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.  Thus, pursuant to O.C.G.A. § 51-12-5.1, Plex is entitled to an award of punitive damages in an amount sufficient to deter, penalize, or punish Defendants in light of the circumstances.

WHEREFORE, Plex respectfully requests that the Court enter judgment in its favor and against Defendants in an amount to be determined at a trial: (i) for direct damages in an amount in excess of five hundred thousand dollars through the date of judgment; (ii) for the recovery of prejudgment interest; (iii) for reimbursement of all costs, expenses, and reasonable attorneys' fees; (iv) for punitive damages in accordance with O.C.G.A. § 51-12-5.1, as separately plead pursuant to Count VI; and (iv) any and all other relief that the Court may determine to be just and proper.

<u>**COUNT VI**</u>
<u>**SPECIFIC PRAYER FOR PUNITIVE DAMAGES**</u>
<u>**AND ATTORNEYS' FEES**</u>
<u>**(Against Both Defendants)**</u>

Plex hereby sues Defendants Atlas and Auspitz for Punitive Damages and Attorneys' Fees and states as follows:

95.     Plex realleges and incorporates by reference Paragraphs 1 through 94, above as if fully set forth herein.

96.     Defendants Atlas's and Auspitz's actions evince willful misconduct,

malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. Thus, pursuant to O.C.G.A. § 51-12-5.1, Plex is entitled to an award of punitive damages in an amount sufficient to deter, penalize, or punish Defendants in light of the circumstances.

97.    Defendants acted, or failed to act, with the specific intent to cause harm to Plex and All Hearts.

98.    Defendants Atlas and Auspitz acted in bad faith or have caused Plaintiff Plex unnecessary trouble and expense.

WHEREFORE, Plex respectfully requests that the Court enter judgment in its favor and against Defendants and include an award of punitive damages in accordance with O.C.G.A. § 51-12-5.1 and reimbursement of attorneys' fees and costs incurred by Plex in accordance with O.C.G.A. § 13-6-11 any and all other relief that the Court may determine to be just and proper.

Dated: December 7, 2023          Respectfully submitted,

/s/ Benjamin E. Fox              Jared A. Ullman (*pro hac vice* forthcoming)
Benjamin E. Fox                  Michael Ullman (*pro hac vice* forthcoming)
Georgia Bar No. 329427           ULLMAN & ULLMAN, P.A.
BONDURANT, MIXSON & ELMORE, LLP  2500 North Military Trail, Suite 100
1201 W. Peachtree Street, NW,    Boca Raton, Florida 33431
Ste. 3900                        Telephone: (561) 338-3535
Atlanta, GA 30309                Facsimile: (561) 338-3581
Tel: 404-881-4100                Email: jared.ullman@uulaw.net
Fax: 404-881-4111                     michael.ullman@uulaw.net
Email: fox@bmelaw.com            *Attorneys for Plaintiff Plex Capital, LLC*